Cook v. State.

---

## Cook v. The State.

[No. 3,460.    Filed February 19, 1901.]

S TATUTES.—*Legislative Authority.*—*Defining Crime.*—One legislature cannot impose restrictions on succeeding legislatures in the enactment of laws, and §237 Burns 1894, requiring that crimes and misdemeanors shall be defined will not have the effect to render invalid a later statute inconsistent therewith. *pp. 280-283.*

SAME.—*Construction.*—*Uncertainty.*—Where the terms of a statute are so uncertain as to their meaning that the court cannot discern with reasonable certainty what is intended, it will pronounce the enactment void. *pp. 281, 282.*

CRIMINAL LAW.—*Narrow Tires.*—*Definition of Offense.*—The court cannot say as a matter of law that wagon tires of a certain width are either wide tires or narrow tires, and §2047 Burns 1894, providing a penalty against any one who cuts up gravel roads or turnpikes by heavy hauling, is so indefinite in so far as it refers to hauling on a narrow-tired wagon that a prosecution thereunder for that offense cannot be sustained. (See Acts 1901, p. 52, amending said section.) *pp. 283, 284.*

From the White Circuit Court. *Reversed.*

*W. V. Stuart, E. P. Hammond* and *D. W. Simms,* for appellant.

*W. L. Taylor, C. C. Hadley* and *Merrill Moores,* for State.

BLACK, J.—This was an action commenced before a justice of the peace upon an affidavit based upon the statute of 1889 (Acts 1889, p. 378, §2047 Burns 1894, §6600 Horner 1897) providing as follows: "It shall be unlawful for any person to haul over any turnpikes or gravel roads at any time when the same is [are] thawing through, or is [are], by reason of wet weather, in condition to be cut up and injured by heavy hauling, a load on a narrow tired wagon of more than twenty hundred pounds, or on a broad tired wagon of more than twenty-five hundred pounds, and any person violating the provisions of this act shall be fined not less than $5 nor more than $50 for each load so hauled."

In the affidavit it was charged, that on, etc., at, etc., "one Charles Cook did then and there unlawfully haul over a certain gravel road, then and there situate, known as the Thompson Gravel Road, a load in his wagon, then and there having narrow tires, to wit, two inches in width, a load of more than 2,000 pounds weight, at a time when said road was then and there thawed through and by reason of wet weather was then and there in a condition to be cut up by heavy hauling, contrary," etc. The appellant's motion to quash the affidavit was overruled.

It is claimed on behalf of the appellant that the statute under which he was prosecuted and convicted "is unconstitutional, invalid, and void for uncertainty, because (1) it fails to define the terms 'narrow tired wagon' and 'broad tired wagon'; (2) these terms have no fixed, certain, and definite meaning. It is impossible for the court or jury to say from the terms used in the statute what is a 'narrow tired wagon' or what is a 'broad tired wagon.'"

No particular clause or provision of the Constitution is pointed out or referred to as contravened or antagonized by the statute, and therefore the appellant can not be regarded as having presented a question as to its constitutionality, or as having duly sought to have the statute pronounced unconstitutional.

Counsel refer to §237 Burns 1894, §237 Horner 1897, providing: "Crimes and misdemeanors shall be defined, and punishment therefor fixed by statutes of this State and not otherwise." And it is contended that under this section every offense should be so defined and described as to enable not only the court and jury trying the cause, but any person of ordinary intelligence, to understand precisely what is meant. It has been decided many times with reference to the provision last above quoted that the legislature can not thus impose limits or restrictions upon its future action, and that when statutes are inconsistent the latest enactment must be regarded as the law. *Wall* v. *State,* 23 Ind. 150; *Burk* v. *State,* 27 Ind. 430; *State* v. *Oskins,* 28 Ind. 364; *Ardery* v. *State,* 56 Ind. 328; *State* v. *Berdetta,* 73 Ind. 185, 38 Am. Rep. 117.

In *State* v. *Oskins, supra,* it was said of a statute providing that any person who shall molest or disturb any meeting, etc., that the words "molest or disturb" have a well defined meaning.

In *Ardery* v. *State, supra,* a prosecution for public indecency, it was said that crimes and misdemeanors, in the absence of definitions in the statutes creating them, may be defined by the court. But in performing such duty the court must act judicially.

In *Hood* v. *State,* 56 Ind. 263, 26 Am. Rep. 21, a prosecution for living in open and notorious fornication, it was said that crimes need not be defined by the statute, "and, consequently, the court must judicially declare the definition."

It is provided (§240 Burns 1894, §240 Horner 1897) that the construction of all statutes of this State "shall be by the following rules, unless such construction be plainly repugnant to the intent of the legislature or of the context of the same statute: First. Words and phrases shall be taken in their plain, or ordinary and usual sense. But technical words and phrases, having a peculiar and appropriate mean-

ing in law, shall be understood according to their technical import."

In this State we do not have any common-law crimes, and criminal prosecutions can be maintained only for offenses denounced as crimes by statute; but where a word or phrase had a definite meaning in the common law, before the enactment of a statute which employs such word or phrase to designate a crime, as the phrase "public nuisance", the court in construing the statute will apply to such word or phrase its well ascertained meaning at common law. *State* v. *Berdetta,* 73 Ind. 185, 38 Am. Rep. 117.

The proper construction of a statute must be the work of the court. *Gaylor's Appeal,* 43 Conn. 82.

In *State* v. *Parker,* 43 N. H. 83, it was said that it must appear that if the facts alleged in an indictment are proved as they are stated, without any additional fact or circumstance, there can be no doubt of the illegality of the conduct charged, nor of its criminality. The language of a criminal statute can not be extended beyond its reasonable meaning, and wherever the court entertains a reasonable doubt as to the meaning, the doubt must be resolved in favor of the accused. The court must expound what it finds written, and can not import additional meaning without sufficient indication thereof in the words of the statute with such aids thereto as the established rules of law authorize. In the absence of any other apparent purpose of the legislature, the statute should be read as written, and all parts and terms therein should be considered together, with reference to their connections and to the subject to which the statute relates. A general statute enacted by the people of the entire State through their representatives speaks for and to the whole population, and therefore can not be given or be supposed to have a merely local meaning, or a meaning varying to suit the special usages prevailing in the several localities. Where the terms of the statute are so uncertain as to their meaning that the court can not discern with rea-

sonable certainty what is intended, it will pronounce the enactment void. Black Int. of Laws, §36; *Cheezem* v. *State*, 2 Ind. 149; *King* v. *State*, 2 Ind. 523.

A statute of North Carolina prohibited the sale of spirituous liquors within three miles of Mount Zion church. in Gaston county. The evidence under an indictment based on this statute showed that there were in that county two churches fifteen miles apart each called Mount Zion church. This statute was held to be void. It was said by the court that the meaning of the statute must be ascertained from the statute itself and the means and signs to which, as appears on its face, it has reference. "Whatever may be the views and purposes of those who procure the enactment of a statute, the legislature contemplates that its intention shall be ascertained from its words as embodied in it. And courts are not at liberty to accept the understanding of any individual as to the legislative intent." *State* v. *Partlow*, 91 N. C. 550. In that case the following language from *Drake* v. *Drake*, 4 Dev. 110, is quoted: "Whether a statute be a public or private one, if the terms in which it is couched be so vague as to convey no definite meaning to those whose duty it is to execute it, either ministerially or judicially, it is necessarily inoperative." It was further said in *State* v. *Partlow, supra,* "When the statute intends to refer to and embrace within its provisions one or more of a multitude of things of the same kind, or one or more persons of many of the same name, it must do so in some way or manner, in terms, or by reasonable implication, or appropriate descriptive words, to designate what things or persons are intended by it. Else, how can the court or a ministerial officer decide what things or persons are meant?" See, also, *Commonwealth* v. *Bank of Pennsylvania*, 3 Watts & S. (Pa.) 173.

There must be some certain standard by which to determine whether an act is a crime or not, otherwise cases in all respects similar tried before different juries might rightfully be decided differently, and a person might properly be

convicted in one county for hauling over a turnpike in that county, and acquitted in an adjoining county of a charge of hauling the same load on the same wagon over a turnpike in like condition in the latter county, because of the difference of conclusions of different judges and juries based upon their individual views of what should be the standard of comparison of tires, derived from their varying experiences or the opinions of witnesses as to what difference of width of tires would constitute one wagon a narrow tired wagon and another a broad tired wagon.

If it should be said that the question as to what is a narrow tired wagon is one which may be determined in a particular case by the jury trying it, under proper instructions from the court, can we hold that the court in its instructions could lay down any principle or rule which would obtain in all such cases throughout the State? If so, can this court indicate what should be the scope or tenor of such instructions? The phrases "narrow tired wagon" and "broad tired wagon" are not technical phrases having a peculiar and appropriate meaning in law, and they are to be taken in their plain or ordinary and usual sense. Thus taken, a narrow tired wagon means a wagon having wheels with tires which are narrow, while a broad tired wagon means a wagon having wheels with broad tires. If tires of particular widths be compared, it is easy to say which is comparatively narrow and which is comparatively broad, but without any prescribed standard it is impossible to say as a matter of law that a tire two inches wide is certainly either a narrow tire or a broad tire.

Looking at the contents of the affidavit and at the language of the statute under which it purports to proceed, we are unable to say that the facts stated in the affidavit certainly constitute a criminal offense.

The meanings of the separate words in the phrases "narrow tired wagon", and "broad tired wagon" are plain, but the words narrow and broad describe, not certain, but uncertain,

comparative widths, and, no standard of comparison being provided by the law, they render the phrases in which they occur uncertain and indefinite. A particular tire may be broad or narrow, according to the width of another tire or of other tires of different widths with which, for the occasion, it is being compared.

In a portion of the statutory description of the offense there is such indefiniteness that it is impossible for the court to say with requisite certainty that the description in the statute corresponds with a definite state of facts shown by the affidavit. The court erred in overruling the motion to quash. Judgment reversed.